UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
                       :

ARA ACOSTA,                     :

                Plaintiff,       :

          -v-                :

                       :        25 Civ. 1119 (JPC)

THE NEW YORK TIMES COMPANY d/b/a The New :
York Times and PAMELA DRYFOOS, individually,   :     OPINION AND ORDER

             Defendants.    :

-------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Ara Acosta brings this suit against Defendants the New York Times and Pamela Dryfoos, challenging the conditions of her former employment and ultimate firing. Defendants have moved to dismiss some of Plaintiff's claims—specifically her claims for disability discrimination under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, and interference with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* For the reasons that follow, Defendants' motion is granted.

## I. Background

### A. Facts[1]

Plaintiff worked for the New York Times as a Finance Manager of its online publication and subsidiary, "The Athletic," starting in May 2023. Am. Compl. ¶ 13. On September 15, 2023,

---

[1] The facts contained in this section, which are assumed true solely for purposes of this Opinion and Order, are taken from Plaintiff's Amended Complaint, Dkt. 27 ("Am. Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

Plaintiff signed a new employment agreement as Administrative Director, which led to a raise and a stipulated term of employment until September 15, 2024. *Id.* ¶¶ 14-15.   Throughout her employment with the New York Times, Plaintiff's direct supervisor was Dryfoos.  *Id.* ¶ 11.

On February 13, 2024, Plaintiff told Dryfoos that she had awoken with a fever and would work from home pending test results for COVID-19. *Id.* ¶ 18.  The next day, February 14, Plaintiff informed Dryfoos that she had in fact tested positive for COVID-19, saying "she was 'incredibly stressed out' and needed to rest."  *Id.* ¶ 20.  Later that day, after Plaintiff mentioned that she had a fever and sore throat, Dryfoos insisted that Plaintiff keep working by saying that "under normal circumstances I would tell you to rest, however, because you are going out of town I need you to work." *Id.* ¶¶ 22-23.  Dryfoos's reference to Plaintiff leaving town concerned "upcoming approved and planned time off that Plaintiff was anticipating in the following weeks."  *Id.* ¶ 24.

After a colleague messaged Plaintiff that she should not be working while sick and that Dryfoos instead should have directed Plaintiff to report to the New York Times's Occupational Health division, Plaintiff—once again on February 14—emailed a senior manager within that division for assistance with her COVID-19 diagnosis.  *Id.* ¶¶ 25, 28-29.  That evening, the manager approved Plaintiff's use of COVID-19 quarantine days, advising Plaintiff that she could return to the office on February 20 after recovering and testing negative.  *Id.* ¶ 30.  Ultimately, Plaintiff's fever and sickness lasted from Monday, February 12, to Friday, February 16.  *Id.* ¶ 26.

In June 2024, Plaintiff asked Dryfoos for seven to eight days off in November to attend a family event.  *Id.* ¶ 32.  Dryfoos responded to that request by saying that it "seems like a long time to be out of office," and that she would need to consult with colleagues "and HR to see if this is okay."  *Id.* ¶ 33.  Plaintiff revisited the time-off request on July 11, 2024, at which point Dryfoos offered Plaintiff a window from November 20 to December 4; when Plaintiff requested

adjustments to those dates, Dryfoos refused, "stating she was 'being generous' and had 'consulted with everyone and HR.'" *Id.* ¶¶ 34-35.  During that July meeting, Dryfoos also cited Plaintiff's purported "performance issues" and her prior illness with COVID-19, explaining that "every time I go out of the office, something happens" and that "I don't really feel comfortable letting you go." *Id.* ¶ 36.  When Plaintiff responded that her COVID-19 illness was beyond her control, Dryfoos acknowledged that "COVID isn't your fault, but still.  Something is always happening."  *Id.* ¶ 37.

The next week, on July 19, 2024, Plaintiff met with Dryfoos to discuss the performance concerns Dryfoos had cited at their last meeting.  *Id.* ¶ 38.  At that meeting, Dryfoos took "responsibility for not being as transparent as I should have been over the last couple months," and indicated three areas of concern: Plaintiff's analytical skills, workload management, and commitment to her role.  *Id.* ¶¶ 40-41.  When Plaintiff asked for examples of her lack of commitment, Dryfoos first said "I should have thought about that a little bit more and come prepared" before giving the example of Plaintiff's request for time off, saying "pushing to take time off when it's a bad time when I think it will hurt the team."  *Id.* ¶¶ 42-43.  After this meeting, Plaintiff began therapy to address the "mental health distress" from her work situation, including a fear of potential retaliation.  *Id.* ¶¶ 45-46.

On August 7, 2024, Plaintiff told Dryfoos that her grandmother was in hospice, which might require her to go to California.  *Id.* ¶ 47.  The next day, Plaintiff began reaching out to human resources to discuss her potential need to take FMLA leave.  *Id.* ¶ 48.  Then, on August 9, Plaintiff emailed "Ms. Garcia," a human-resources representative, explaining that she wished to speak with someone in human resources regarding "family leave I need to take and my concern for retaliation from my director."  *Id.*  Garcia responded by giving Plaintiff New York Paid Family Leave forms, and telling Plaintiff that, "as for the concern regarding potential retaliation[,] we can absolutely

talk about that but I firmly believe it should wait and you should be with your grandmother now." *Id.* ¶¶ 49-50 (quotation modified).

On August 12, 2024, Plaintiff met with Garcia to discuss Plaintiff's leave request and retaliation concerns, including Dryfoos's comments about Plaintiff's COVID-19 bout and performance. *Id.* ¶¶ 51-52. According to Plaintiff, Garcia advised her "to take leave and consider short-term disability if needed for her mental well-being." *Id.* ¶ 53. Plaintiff took up that advice on August 22, 2024, when she requested short-term disability leave due to mental health distress, including from her grandmother's passing. *Id.* ¶ 54.

Plaintiff's short-term disability and FMLA leave requests were approved for the period of August 26, 2024, through November 18, 2024. *Id.* ¶ 55. But on September 9, while on that approved leave, Plaintiff was informed by Garcia that her position was being eliminated, allegedly because "the amount of work available for [T]he [A]thletic is less than we imagined." *Id.* ¶¶ 57-58. When Plaintiff voiced concern about her termination's timing—given that she had recently expressed a fear of retaliation to human resources—Garcia assured her that organizational restructuring had been "underway prior to that" and that Plaintiff was "not the only person impacted in finance." *Id.* ¶¶ 59-60. That assurance was undercut, however, when Plaintiff's colleagues informed her that same day that their managers told them "to not worry because [Plaintiff's] role was the only one eliminated and they were safe." *Id.* ¶ 62 (alteration in original).

A few days later, Plaintiff learned that Dryfoos had inquired about hiring a contractor to replace Plaintiff. *Id.* ¶¶ 63-64. After Plaintiff, through counsel, complained to Defendants about "her unlawful treatment and Dryfoos's . . . retaliation" on October 7, 2024, evidence of Dryfoos's attempt to hire a contractor allegedly "disappeared from [the New York Times's] electronic records." *Id.* ¶¶ 65-66. But Plaintiff alleges that Dryfoos kept trying to hire Plaintiff's

4

replacement, this time soliciting another New York Times employee to consider moving to The Athletic's finance team. *Id.* ¶ 67. Dryfoos allegedly explained to this employee "that they could not be hired 'right now' because it [would] cause 'legal issues' . . . but promised that once the legal issues 'died down,' they would be able to join The Athletic's team within the year." *Id.* Such behavior, Plaintiff asserts, constitutes "Dryfoos's obvious attempt to cover up her retaliatory decision to terminate Plaintiff's employment by shrouding her efforts to hire Plaintiff's replacement until a time long enough from Plaintiff's complaints to break [the] chain of events demonstrating her unlawful behavior." *Id.* ¶ 68.

**B.     Procedural History**

Plaintiff filed this lawsuit against Defendants on February 7, 2025. Dkt. 1 ("Compl."). The original Complaint asserted five causes of action: disability discrimination under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, Compl. ¶ 70-73; retaliation under the NYSHRL, *id.* ¶¶ 74-78; disability discrimination under the NYCHRL, *id.* ¶¶ 79-81; retaliation under the NYCHRL, *id.* ¶¶ 82-86; and interference and retaliation under the FMLA, *id.* ¶¶ 87-95. On April 16, 2025, Defendants moved to stay all proceedings upon Plaintiff's filing of a charge with the Equal Employment Opportunity Commission, Dkt. 13, a motion this Court denied on April 23, 2025, Dkt. 17. On May 16, 2025, the Court entered a Civil Case Management Plan and Scheduling Order setting discovery deadlines, Dkt. 22; after two extensions, Dkts. 32, 41, discovery remains ongoing. *See* Dkt. 43 (updated Civil Case Management Plan and Scheduling Order).

On June 2, 2025, Defendants moved to dismiss Plaintiff's NYSHRL and NYCHRL disability-discrimination claims and her FMLA interference claim. Dkts. 24-26. In response, Plaintiff filed her Amended Complaint. Dkt. 27. The Amended Complaint drops Plaintiff's

NYSHRL disability-discrimination and retaliation claims and adds a retaliation claim under the New York Labor Law, N.Y. Lab. L. § 215. *Compare* Compl. ¶¶ 70-78, *with* Am. Compl. ¶¶ 71-75. But like the original Complaint, the Amended Complaint asserts causes of action for disability discrimination under the NYCHRL, Am. Compl. ¶¶ 76-81, retaliation under the NYCHRL, *id.* ¶¶ 82-89, and interference and retaliation under the FMLA, *id.* ¶¶ 90-102. The Court accepted, under Federal Rule of Civil Procedure 15(a)(2), the Amended Complaint as Plaintiff's operative pleading on July 11, 2025, and set a briefing schedule on Defendants' anticipated motion to dismiss that same day. Dkt. 30.

On August 1, 2025, Defendants moved to dismiss two claims in the Amended Complaint: disability discrimination under the NYCHRL and interference under the FMLA. Dkts. 33, 34, 35 ("Motion"). Plaintiff filed her opposition on August 29, 2025, Dkt. 36 ("Opposition"), and Defendants filed their reply on September 15, 2025, Dkt. 37 ("Reply").

## II. Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as

true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp.*, *PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### III.  Discussion

Defendants move to dismiss only two of the Amended Complaint's claims: disability discrimination under the NYCHRL and interference under the FMLA.  The Court takes each in turn.

### A.    Plaintiff Fails to State a Disability-Discrimination Claim Under the NYCHRL.

The NYCHRL makes it unlawful to discharge an employee or otherwise discriminate against her in the terms, conditions, and privileges of employment because of her "actual or perceived . . . disability." N.Y.C. Admin. Code § 8-107(1)(a).  To plead disability discrimination under the NYCHRL, "a plaintiff must show that: (1) his employer was subject to the . . . NYCHRL; (2) he was disabled, within the meaning of th[at] statu[te]; (3) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016); *accord Shi v. Batgatelle Int'l, Inc.*, No. 20 Civ. 8473 (ER), 2023 WL 4187557, at *7 (S.D.N.Y. June 26, 2023).  At the present motion-to-dismiss stage, Defendants challenge only the second element: whether Plaintiff's COVID-19 infection, as pleaded, counts as a disability under the NYCHRL. *See* Motion at 5-8; Reply at 2-5.

The NYCHRL defines "disability" as "any physical, medical, mental or psychological impairment." N.Y.C. Admin. Code § 8-102.  Such impairments, in turn, are defined as

> [a]n impairment of any system of the body; including, but not limited to, the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system.

7

*Id.* While courts "must construe the NYCHRL broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible," the statute's breadth does not imply that it is without limit. *Makinen v. City of New York*, 86 N.E.3d 514, 519-20 (N.Y. 2017) (citation modified). That is why courts have "imposed some threshold requirement of seriousness or permanence for an injury or illness to qualify as a disability under the law." *Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18 Civ. 4476 (LJL), 2025 WL 2781280, at *26 (S.D.N.Y. Sept. 30, 2025) (collecting cases).

As pleaded, Plaintiff's COVID-19 infection falls short of that threshold to qualify as a disability for purposes of the NYCHRL. Plaintiff alleges that she suffered, at most, from "a bad fever and sore throat" which lasted "five days." Am. Compl. ¶¶ 23, 26. That is "an asymptomatic or mild instance of COVID-19," which courts have contrasted with bouts of COVID-19 that do count under the statute, such as an infection that "significantly impaired [one's] respiratory system, leaving him with breathing difficulties requiring the use of an oxygen machine," *Arazi v. Cohen Bros. Realty Corp.*, No. 20 Civ. 8837 (GHW), 2022 WL 912940, at *9 (S.D.N.Y. Mar. 28, 2022) (citation modified), or "a *serious respiratory virus* that may have been the result of COVID-19," *Velez v. Girraphic LLC*, No. 20 Civ. 5644 (JPC), 2021 WL 1873233, at *5 (S.D.N.Y. May 10, 2021) (emphasis added). *Compare Jones-Cruz v. Rivera*, No. 19 Civ. 6910 (PGG), 2022 WL 20437017, at *14 (S.D.N.Y. Oct. 28, 2022) (finding that the plaintiff sufficiently pleaded a NYCHRL disability where she alleged that "her COVID-19 infection . . . resulted in breathing problems, inflammation of the lungs, asthma like symptoms, shortness of breath, dizziness, and hypoxia" (citation modified), *with Williams v. City of New York*, No. 20 Civ. 8622 (JPO), 2022 WL 976966, at *5 (S.D.N.Y. Mar. 31, 2022) (rejecting the plaintiff's suggestion that she was

"disabled" simply "because she contracted COVID-19" and accordingly dismissing her "NYCHRL disability claims").

Without more, Plaintiff has simply alleged suffering from a garden-variety illness, meaning that under her theory of the case, *any* illness or injury would qualify as a disability under the NYCHRL. But caselaw counsels against such a broad reading of the statute. For instance, the New York Supreme Court's Appellate Division, First Department, has held that a "soft-tissue injury" which kept a plaintiff out of work for ten days, "after which he could return with 'no restrictions,'" did "not rise to the level of a cognizable disability under the City HRL." *A. Anonymous v. Mount Sinai Hosp.*, 82 N.Y.S.3d 408, 409 (1st Dep't 2018). That same court likewise held that a plaintiff had "not adequately pled or established a recognized disability under [the NYCHRL]" when "[h]is medical proof only established that he was extremely anxious and stressed." *Toth v. N.Y.C. Dep't of Citywide Admin. Servs.*, 988 N.Y.S.2d 488, 489 (Mem.) (1st Dep't 2014). These holdings make sense: as one New York state court further explained, "a single, temporary, two-week illness with no subsequent long-lasting or permanent physical disability" could "not qualify as a disability" under the NYCHRL, because were it otherwise, "any illness of short duration and with little or no long-lasting or permanent physical manifestations"—indeed "virtually any minor fleeting condition"—would "constitute a disability." *Dillon v. Silverman*, No. 153549/2012, 2024 WL 1483666, at *5-6 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 9, 2014). While the New York City Council may "amend the language" of the NYCHRL to stretch that broadly, "until it does," this Court cannot so read the statute. *Makinen*, 86 N.E.3d at 520.

Courts in this District have accordingly declined to treat allegations of any illness or injury as sufficient to plead a NYCHRL disability. *See, e.g.*, *Shi*, 2023 WL 4187557, at *8 (explaining that the plaintiff's pneumothorax and after-effects from surgeries did not "constitute the sorts of

impairments contemplated by the" NYCHRL where she had "not alleged that, upon her return to work, she suffered any after-effects from the pneumothorax or surgeries other than medical restrictions from lifting heavy objects and being exposed to anxiety or stress"); *Shankar v. Accenture LLP*, No. 21 Civ. 3045 (PAE) (OTW), 2023 WL 2908660, at *4 (S.D.N.Y. Feb. 14, 2023) (explaining that the plaintiff had not pleaded "enough factual content for the Court to conclude that his 'stomach issue' was a disability within the meaning of the . . . NYCHRL" where the plaintiff had "not provided allegations about the extent of his 'stomach issue,' how long his expected recovery was, or what particular tasks he believed he was expected to" perform before or after the surgery), *report and recommendation adopted*, 2023 WL 2557315, at *1-2 (S.D.N.Y. Mar. 17, 2023); *Tatas v. Ali Baba's Terrace, Inc.*, No. 19 Civ. 10595 (ER), 2022 WL 993566, at *11-12 (S.D.N.Y. Mar. 31, 2022) (explaining that the plaintiff's particular cancer did not sufficiently "impair the body" where he "returned to work the day after the surgery" to remove the cancer and only "experienced difficulty concentrating at work and took painkillers for the week following the surgery"); *Simmons v. Woodycrest Ctr. For Hum. Dev., Inc.*, No. 10 Civ. 5193 (JSR), 2011 WL 855942, at *4 (S.D.N.Y. Mar. 9, 2011) (declining to hold that hypertension alone "constitutes a disability under the . . . NYCHRL"). This Court agrees.

Plaintiff's reliance on *Arazi* and *Velez*, two decisions involving COVID-19 in this District, is misplaced. *See* Opposition at 5-7. *Arazi*, as already mentioned, contrasted a "mild" case of COVID-19 with the one actually pleaded, which resulted in "breathing difficulties requiring the use of an oxygen machine" and thus "significantly impaired [the patient's] respiratory system." 2022 WL 912940, at *9-10 (internal quotation marks omitted). So while that court observed that "whether an impairment is 'minor' or 'transitory' has no bearing on Plaintiffs' NYCHRL claim for associational disability," it did not hold that a mild COVID-19 infection like Plaintiff's would

suffice, nor that any allegation of any illness would either.  *Id.*[2]  And in *Velez*, this Court held that

the plaintiff adequately "alleged that he had a disability in the form of a serious respiratory virus

that *may* have been the result of COVID-19."  2021 WL 1873233, at *5 (emphasis added).  True

enough, this Court rejected the defendant's argument that it "should not consider COVID-19 or

suspected COVID-19 to be a disability for 'public policy' reasons," explaining that the defendant

had "fail[ed] to ground this argument in the text of the NYCHRL, which provides an expansive

definition of 'disability.'"  *Id.* at *6.  But in doing so, this Court was merely rejecting a categorical

*exclusion* of COVID-19 from the NYCHRL's definition of disability; it did not hold that any

alleged COVID-19 infection would suffice.

Ultimately, Plaintiff's allegations of a five-day fever and sore throat—whether caused by

COVID-19 or not—do not suffice to plead that she suffered a disability under the NYCHRL.  So

her NYCHRL disability-discrimination claim is dismissed for failure to state a claim.

**B.    Plaintiff Fails to State an Interference Claim Under the FMLA.**

As the Second Circuit has explained, "FMLA claims come in at least two varieties:

interference and retaliation."  *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158,

166 (2d Cir. 2017).  An interference claim is one where an "employer has prevented or otherwise

---

[2] Indeed, that observation was made in response to "Defendant's arguments that a disability cannot be 'minor' or 'transitory,' [which] rel[ied] on case law decided under the Americans with Disabilities Act ('ADA')," even though the NYCHRL "define[s] disability more broadly than the ADA."  *Arazi*, 2022 WL 912940, at *10 (citation modified).  While it is undoubtedly true that the NYCHRL is broader than the ADA—a point on which much of Plaintiff's argument relies, *see* Opposition at 6 (collecting cases)—that does not resolve the question of whether a particular illness or injury as pleaded meets the definition of disability under the NYCHRL.  *See, e.g.*, *Shi*, 2023 WL 4187557, at *8 ("Even under the liberal . . . NYCHRL definition[], however, temporary conditions do not qualify as disabilities."); *Tatas*, 2022 WL 993566, at *12 & n.23 (holding that the plaintiff's carcinoma did not qualify him "as disabled under the NYSHRL and the NYCHRL" even though "[c]ourts have concluded that the NYSHRL and NYCHRL have a broader definition of disability than does the ADA" (internal quotation marks omitted)).

impeded the employee's ability to exercise rights under the FMLA." *Id.*  Retaliation claims, by contrast, "involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Id.*  "The two types of claims serve as *ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA." *Id.*

While styled as a single cause of action, the Amended Complaint actually brings both FMLA interference and retaliation claims.  *See* Am. Compl. ¶¶ 90-102.  Defendants expressly move to dismiss only the interference claim.  *See* Reply at 5 ("Defendants are not moving to dismiss Plaintiff's FMLA *retaliation* claim, but rather her FMLA *interference* claim."); Motion at 8-9 (distinguishing interference and retaliation claims and arguing that the Amended Complaint's allegations "fail to salvage a claim based on FMLA interference").  The Court thus considers only whether Plaintiff's Amended Complaint states an FMLA interference claim.  It does not.

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the statute]."  29 U.S.C. § 2615(a)(1).  To "prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5)" that "the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).  A defendant otherwise interferes with a plaintiff's FMLA rights when it "discourages but does not deny [the] employee's request for FMLA leave." *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 66, 68-69 (2d Cir. 2024).

12

Presumably because an employee is only eligible for FMLA leave after she has been employed for at least twelve months and has worked at least 1,250 hours within those twelve months, 29 U.S.C. § 2611(2)(A), Plaintiff "limits" her FMLA claims "to those accruing" after May 2024, Am. Compl. ¶ 92. *See id.* ¶ 13 (alleging that Plaintiff began work in May 2023). But the only relevant leave Plaintiff alleges she requested after that date—pertaining to her grandmother's care and her "bereavement and ongoing mental health distress"—was granted. *Id.* ¶¶ 53-55 ("Her short-term disability and FMLA leave were approved from August 26, 2024, through November 18, 2024."). Nor does Plaintiff allege that Defendants discouraged her from taking that leave. To the contrary, Plaintiff alleges that Garcia, the New York Times's human-resources representative, twice *encouraged* her to take leave. *Cf. Herron v. N.Y.C. Transit*, No. 22-989-cv, 2023 WL 4285816, at *2 (2d Cir. June 30, 2023) (summary order) (affirming the grant of summary judgment on an FMLA interference claim in the employer's favor where the employee's "supervisors encouraged him to take FMLA leave"). On August 8, 2024, after Plaintiff reached out about FMLA leave because of her grandmother's illness, "Garcia responded with sympathy and provided New York Paid Family Leave forms" to Plaintiff and even told Plaintiff that "I firmly believe . . . you should be with [your grandmother] now." Am. Compl. ¶¶ 48-50. And a few days later, on August 12, Garcia again "advised Plaintiff to take leave and consider short-term disability if needed for her mental well-being due to her bereavement and ongoing mental health distress." *Id.* ¶¶ 51-53. So Plaintiff "has failed to plausibly allege that she was denied or discouraged from taking FMLA leave." *Mcloughlin v. Vill. of Southampton*, No. 23 Civ. 6586 (GRB), 2024 WL 4189224, at *5 (E.D.N.Y. Sept. 13, 2024).

Plaintiff seems to argue that Dryfoos's allegedly pretextual performance concerns—raised during their July 19, 2024 meeting—were "to discourage Plaintiff from taking time off to deal

13

with health issues." Opposition at 8 (citing Am. Compl. ¶¶ 38-39). But to prevail on an interference by discouragement theory, a plaintiff must first objectively assert her FMLA rights. *Wasserman v. N.Y.C. Dep't of Educ.*, No. 24 Civ. 1719 (MMG), 2025 WL 1906978, at *4 (S.D.N.Y. July 10, 2025). Plaintiff only asserted her FMLA rights *after* that July 19, 2024 meeting: at the earliest, on August 8, 2024, when she "began reaching out to HR to identify the appropriate contact person to discuss her potential need for FMLA leave." Am. Compl. ¶ 48. The Amended Complaint does not allege that, prior to August 8, Plaintiff "made a request for leave, either formally or informally, or provided [Defendants] *any* information regarding" leave. *Wasserman*, 2025 WL 1906978, at *4. So Plaintiff's reliance on the July 19 meeting cannot establish an FMLA interference claim.

Nor does the Amended Complaint's sole remaining allegation of interference suffice. Plaintiff alleges that Defendants "interfered with" her "FMLA rights by [1] failing to designate her leave as FMLA-protected and [2] failing to provide her with required notices regarding her FMLA rights." Am. Compl. ¶ 99. But the first part of that allegation is conclusory; how "defendants' [alleged] failure to designate [plaintiff's] leave as a FMLA-protected absence" "translate[s] into prejudicial interference is unclear, and plaintiff offers little elucidation," *Lopera v. Compass Grp. USA, Inc.*, 578 F. Supp. 3d 130, 136 (D. Mass. 2021), especially when Plaintiff herself alleges that she received FMLA leave as requested, Am. Compl. ¶ 55.[3] And the second

---

[3] By contrast, Plaintiff alleges her termination as part of her FMLA retaliation claim. Am. Compl. ¶ 100 ("Defendants retaliated by terminating Plaintiff from her employment while on approved FMLA leave."). That accords with the prevailing practice in this Circuit of treating termination as claims for retaliation: "Consistent with the *ex ante* nature of FMLA interference claims, several courts in this Circuit have cautioned that claims of this nature should be considered retaliation claims, not interference claims, and must therefore be analyzed under the *McDonnell Douglas* burden shifting framework" applicable to retaliation claims. *Nikolakopoulos v. Macy's Inc.*, No. 20 Civ. 1641 (KPF), 2022 WL 3903595, at *26 (S.D.N.Y. Aug. 30, 3022) (citation modified).

14

falls short as a matter of law: the failure to follow the FMLA's notice requirements, the Second Circuit recently explained, "is actionable interference only if an employee was prejudiced by this failure," as "an employee may not sue the employer for failure to give notice if that failure in no way affected the employee's leave, benefits, or reinstatement." *Haran v. Orange Bus. Servs., Inc.*, --- F.4th ----, 2025 WL 3275122, at *5 (2d Cir. Nov. 25, 2025) (citation modified). Here, Plaintiff "took the time off she requested without obstruction," so "[a]ny lack of notice thus did not affect [her] exercise of or attempt to exercise any substantive right conferred by the FMLA and cannot serve as the basis for an FMLA interference claim." *Id.* (citation modified).

Ultimately, "[s]ince plaintiff has not sufficiently alleged that she was formally denied FMLA benefits or was discouraged from exercising them, her FMLA interference claim is dismissed." *Mcloughlin*, 2024 WL 4189224, at *5.

## IV.  Conclusion

For the above reasons, the Court grants Defendants' motion to dismiss Plaintiff's NYCHRL disability-discrimination and FMLA interference claims.  The Clerk of Court is respectfully directed to close Docket Number 33.

SO ORDERED.

Dated: December 3, 2025
New York, New York

_____
JOHN P. CRONAN
United States District Judge

15